**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| INTEGRAMED HOLDING CORP., *et al.*,[1] | ) | Case No. 20-11169 (LSS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | RE: Docket No. 35 |

### ORDER APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES TO FERTILITY NEWCO, LLC

This matter comes before the Court upon consideration of the motion of Jeoffrey L. Burtch, in his capacity as the chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors for entry of an order (this "Order"), in part (A) authorizing and approving the entry into and performance under the terms and conditions of the Asset Purchase Agreement with Fertility Newco, LLC ("FNC" or the "Successful Bidder") substantially in the form attached hereto as **Exhibit A** (the "APA")[2], whereby the Trustee has agreed to sell and FNC to acquire the Purchased Assets, and the Trustee has agreed to transfer and FNC has agreed to assume certain liabilities (specifically as set forth and defined in the APA, the "Assumed Liabilities") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "Sale"); (B) authorizing and approving the sale of the Purchased Assets of the Debtors' Estates free and clear of any and all liens, claims,

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): IntegraMed Holding Corp. (20-11169 LSS), IntegraMed America, Inc. (20-11170 LSS), Trellis Health, LLC (20-11171 LSS), IntegraMed Fertility Holding Corp. (20-11172 LSS), Reproductive Partners, Inc. (20-11173 LSS), IntegraMed Management of Bridgeport, LLC (20-11175 LSS), IntegraMed Florida Holdings, LLC (20-11176 LSS), IntegraMed Management of Mobile, LLC (20-11179 LSS), IntegraMed Management, LLC (20-11181 LSS), and IntegraMed Medical Missouri, LLC (20-11184 LSS).

[2] Capitalized terms used in this Order and not immediately defined have the meanings given to such terms in the Sale Motion or the APA, as applicable.

interests and encumbrances; and (C) authorizing the assumption and assignment to FNC of the Assigned Contracts (as defined in the APA) in accordance with the provisions of the order approving the bidding procedures and granting certain related relief (the "Bidding Procedures Order") [Docket No. 72] and the APA; and (D) granting other relief (the "Sale Motion") [Docket No. 35]; and the Court having entered the Bidding Procedures Order on June 8, 2020; and an auction conducted in accordance with the Bidding Procedures (the "Auction") having been held on July 17, 2020, pursuant to the Bidding Procedures Order; and FNC having submitted the highest and best offer at the Auction for the Purchased Assets; and the Court having conducted a hearing on the Sale Motion on July 23, 2020 (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court, having reviewed and considered the Sale Motion, the APA, and all objections to the Sale and the APA filed in accordance with the Bidding Procedures Order; and having heard statements of counsel and the evidence presented in support of the relief requested in the Sale Motion at the Sale Hearing, including the declarations of Jay Rose, M.D. and Mark Segal in support of the Sale Motion; and it appearing that due notice of the Sale Motion, the APA, the Bidding Procedures Order and the Auction has been provided; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their Estates, their stakeholders and all other parties-in-interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

### Jurisdiction, Venue and Final Order

A. This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

### Notice of the Sale, APA, Sale Hearing, Auction and the Cure Payments

C. As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Sale Motion, the Auction, the Sale Hearing and the Sale has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Trustee has complied with all obligations to provide notice of the Sale Motion, the Auction, the Sale Hearing and the Sale as required by the Bidding Procedures Order. The foregoing notice was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the APA or the Sale is required.

D. A reasonable opportunity to object or to be heard regarding the relief requested in the Sale Motion was afforded to all interested persons and entities.

E. In accordance with the Bidding Procedures Order, the Trustee served a notice of the intent to assume and assign the Assigned Contracts and of the Cure Payments upon each non-Debtor counterparty to an Assigned Contract. The service and provision of such notice was good,

sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assigned Contracts or establishing a Cure Payment for the respective Assigned Contracts. Non-Debtor counterparties to Assigned Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assigned Contracts and the Cure Payments set forth in the notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, FNC for purposes of section 365(c)(1) of the Bankruptcy Code). All objections, responses, or requests for adequate assurance, if any, have been resolved except as otherwise set forth herein.

### Highest and Best Offer

F.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Trustee conducted an Auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order. The Auction was duly noticed and conducted in a noncollusive, fair, and good faith manner and the Auction and sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Purchased Assets and assume the Assumed Liabilities.

G.      The Purchased Assets were adequately marketed by the Trustee, and the consideration provided by FNC under the APA constitutes the highest or otherwise best offer and provides fair and reasonable consideration to the Estates for the sale of the Purchased Assets and the assumption of the Assumed Liabilities. The Trustee's determination that the consideration provided by FNC under the APA constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

H. Approval of the Sale Motion and the APA, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors' Estates, creditors, and other parties in interest. The Trustee has demonstrated good, sufficient, and sound business reasons and justifications for entering into the Sale and the performance of his obligations under the APA.

I. Entry of an order approving the APA and all the provisions thereof is a necessary condition precedent to FNC's consummation of the Sale, as set forth in the APA.

J. The APA was not entered into, and neither the Trustee nor FNC has entered into the APA or proposes to consummate the Sale, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors. Neither the Trustee nor FNC is entering into the APA, or proposing to consummate the Sale, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer of Claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

K. FNC has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the APA, and the Sale and the APA likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

## Good Faith of Successful Bidder

L. The APA and the Sale contemplated thereunder were proposed, negotiated, and entered into by and among the Trustee and FNC without collusion, in good faith, and at arm's-length.

M. Neither FNC, nor any of its affiliates, present or contemplated members, officers, directors, shareholders, or any of their respective successors and assigns (each such entity

individually and taken together, the "<u>Successful Bidder Group</u>") is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, or their affiliates. The Successful Bidder Group is entering into the Sale in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding. Neither the Trustee nor the Successful Bidder Group have engaged in any action or inaction that would cause or permit the APA to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

N.    The consideration provided by FNC pursuant to the APA for its purchase of the Purchased Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and under the laws of the United States, any state, territory, possession, or the District of Columbia.

<b><u>Validity of Transfer</u></b>

O.    The Trustee has authorized the execution and delivery of the APA, the sale of the Purchased Assets and the assumption of the Assumed Liabilities to FNC. Upon entry of this Order, the Trustee: (i) has full power and authority to execute and deliver the APA and all other documents contemplated thereby, as applicable; (ii) has all of the power and authority necessary to consummate the Sale; and (iii) has taken all action necessary to authorize and approve the APA and to consummate the Sale, and no further consents or approvals are required for the Trustee to consummate the transactions contemplated by the APA, except as otherwise set forth in the APA. The Purchased Assets constitute property of the Debtors' Estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' Estates.

## Section 363(f) Is Satisfied

P.    The sale of the Purchased Assets to FNC under the terms of the APA meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the sale of the Purchased Assets will be free and clear of any and all liens, claims, interests, and encumbrances, and except as expressly provided in the APA with respect to the Assumed Liabilities, the (i) transfer of the Purchased Assets to FNC and (ii) assumption and/or assignment to FNC of the Assigned Contracts and Assumed Liabilities will be free and clear of all liens, claims, interests, and encumbrances and will not subject FNC to any liability for any liens, claims, interests, and encumbrances whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability).  All holders of liens, claims, interests, and encumbrances who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of liens, claims, interests, and encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code— by having their liens, claims, interests, and encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert liens, claims, interests, and encumbrances, or other specifically dedicated funds, in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to any rights, claims and defenses of the Trustee, the Debtors or their Estates, as applicable, or as otherwise provided herein.

Q.    FNC would not have entered into the APA and would not consummate the Sale of the Purchased Assets, thus adversely affecting the Debtors, their Estates, creditors, and other parties in interest, if the sale of the Purchased Assets was not free and clear of all liens, claims, interests, and encumbrances or if FNC would, or in the future could, be liable for any Claim (as

defined in the APA), including, without limitation and as applicable, certain liabilities that expressly are not assumed by FNC as set forth in the APA (including the Excluded Liabilities as defined in the APA) or in this Order. FNC asserts that it will not consummate the Sale unless the APA specifically provides, and this Court specifically orders, that neither FNC, nor its assets, nor the Purchased Assets, will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claim or successor or transferee liability for any of the Debtors.

R.       The transfer of the Debtors' Purchased Assets to FNC under the APA will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Debtors' Purchased Assets free and clear of all liens, claims, interests, and encumbrances. The Trustee may sell the interests in the Purchased Assets free and clear of all liens, claims, interests, and encumbrances because, in each case, one or more of the standards set forth in section 363(f) has been satisfied.

**Assumption and Assignment of the Assigned Contracts**

S.       The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order are integral to the APA, are in the best interests of the Debtors' Estates, creditors, and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Trustee.

T.       The Trustee has met all requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts. The Trustee and/or FNC, as applicable under the APA, have, except as otherwise provided herein, (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or

adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from any default prior to the Closing under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Each of the Assigned Contracts is free and clear of all liens, claims, interests, and encumbrances against FNC.

U.      FNC has provided adequate assurance of its future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Assigned Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, FNC, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.      The Sale Motion is granted to the extent set forth herein.

2.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are, except as provided in other orders of the Court, hereby overruled on the merits with prejudice. All persons and entities given notice of the Sale Motion that failed to timely object thereto are deemed to consent to the relief sought therein including, without limitation, all non-Debtor counterparties to the Assigned Contracts.

3.      Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

**Approval of the APA**

4.     The APA, all of the terms and conditions thereof, and all of the transactions contemplated therein, are approved in all respects.  The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

5.     The Trustee is authorized, but not directed, to: (a) take any and all actions necessary or appropriate to perform, consummate, implement and close the Sale, including the sale to FNC of the Purchased Assets, in accordance with the terms and conditions set forth in the APA and this Order; (b) to assume and assign any and all Assigned Contracts; and (c) to take all further actions and to execute and deliver the APA and any and all additional instruments and documents that may be (i) reasonably requested by FNC for the purpose of assigning, transferring, granting, conveying, and conferring to FNC, or reducing to possession, the Purchased Assets, (ii) necessary, appropriate or desirable to the performance of the obligations contemplated by the APA, and (iii) as may be reasonably requested by FNC to implement the APA and consummate the Sale in accordance with the terms thereof, all without further order of the Court.

6.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Trustee to transfer the Purchased Assets to FNC in accordance with the APA and this Order.

7.     At Closing, all of the Estates' right, title and interest in and to, and possession of, the Purchased Assets shall be immediately vested in FNC pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code free and clear of any and all liens, Claims, interests, and encumbrances.  Such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets.  All persons or entities, presently or on or after the Closing, in possession of some or all of the Purchased Assets, are directed to surrender possession of the Purchased Assets to FNC or its respective designees on the Closing or at such time thereafter as FNC may request.

8.     This Order: (a) shall be effective as a determination that, as of the Closing, (i) no Claims other than Assumed Liabilities will be asserted against FNC or any of its respective assets, (ii) the Purchased Assets shall have been transferred to FNC free and clear of all liens, claims, interests and encumbrances, and (iii) the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.  The Purchased Assets are sold free and clear of any

reclamation rights.  For the avoidance of doubt, all liens, claims, interests, and encumbrances on the Purchased Assets attach to the proceeds of the Sale ultimately attributable to the property against which such liens, claims, interests, and encumbrances applied or other specifically dedicated funds, in the same order of priority and with the same validity, force and effect that such liens, claims, interests, and encumbrances applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their Estates, as applicable, or as otherwise provided herein.  For the avoidance of doubt, FNC shall not be liable for the allocation of Sale proceeds among the Debtors or their non-Debtor subsidiaries.

9.     Except as otherwise provided in the APA, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, and the ownership, sale, or operation of the Purchased Assets prior to Closing or the transfer of the Purchased Assets to FNC, are hereby forever barred, estopped, and permanently enjoined from asserting such Claims against FNC, its property, the Successful Bidder Group, their property or the Purchased Assets.  Following the Closing, no holder of any Claim shall interfere with FNC's title to or use and enjoyment of the Debtors' Purchased Assets based on or related to any such Claim, or based on any action the Trustee may take in the Bankruptcy Cases (as defined in the APA).

10.     If any person or entity that has filed financing statements, mortgages, mechanic's Claims, lis pendens, or other documents or agreements evidencing Claims against, in, or upon the Purchased Assets shall not have delivered to the Trustee prior to the Closing of

the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Claims, then: (a) the Trustee is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors' Purchased Assets; (b) FNC is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, Claims, interests, and encumbrances against FNC and the Debtors' Purchased Assets; and (c) upon consummation of the Sale, FNC may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims and liens that are extinguished or otherwise released pursuant to this Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Claims and liens shall be self-executing, and neither the Trustee, the Debtors nor FNC shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

<strong><u>No Successor or Transferee Liability</u></strong>

11. The Successful Bidder Group shall not be deemed, as a result of any action taken in connection with the APA, the consummation of the Sale contemplated by the APA, or the transfer, operation, or use of the Purchased Assets to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Successful Bidder, with respect to any obligations as an assignee under the Assigned Contracts arising after the Closing); (b) have, de

facto or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, ERISA, tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine.

12. FNC shall not have any responsibility for: (a) any liability or other obligation of the Debtors, the Trustee or related to the Purchased Assets (including the Excluded Liabilities set forth in section 2.3 of the APA) other than the Assumed Liabilities or (b) any Claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the APA with respect to FNC, FNC shall have no liability whatsoever with respect to the Debtors, (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. FNC shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.), the Comprehensive Environmental Response Compensation and Liability Act, the Age

Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), or the National Labor Relations Act, 29 U.S.C. § 151, et seq. (the "NLRA") or any foreign, federal, state or local labor, employment (including any rights under any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of the Employee Retirement Income Security Act of 1974, health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability)), or environmental law by virtue of FNC's purchase of the Purchased Assets or assumption of the Assumed Liabilities. Without limitation of the foregoing, the Successful Bidder Group shall have no liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Purchased Assets except to the extent they are Assumed Liabilities with respect to the Successful Bidder. FNC shall have no liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing.

13. Except as provided in the APA for the Assumed Liabilities, with respect to the Successful Bidder, nothing in this Order or the APA shall require the Successful Bidder Group to: (a) continue or maintain in effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any

-15-

employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

14. Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against FNC, or its assets (including the Purchased Assets), with respect to any: (a) Claim or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff, or right of subrogation of any kind; or (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof.

## Good Faith of Purchaser

15. The Sale contemplated by the APA is undertaken by FNC without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts), unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

16. Neither the Trustee, the Debtors, nor FNC have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. The consideration provided by FNC for the Purchased

Assets under the APA is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

### Assumption and Assignment of the Assigned Contracts

17. The Trustee is authorized at the Closing to assume and assign each of the Assigned Contracts to FNC free and clear of all liens, claims, interests and encumbrances pursuant to sections 105(a) and 365 of the Bankruptcy Code and to execute and deliver to FNC such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to FNC. The payment of the applicable Cure Payments (if any), as fixed in the amounts set forth in the Trustee's Notice of Executory Contracts and Unexpired Leases that may be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially All of the Debtors' Assets, and the Proposed Cure Amounts, dated June 12, 2020 [docket No. 83], as supplemented on July 9, 2020 [docket No. 221], and as may be further supplemented, or, if applicable, such other amount(s) upon which the Trustee and any of the Counterparties may have agreed, shall: (a) effect a cure of all defaults existing thereunder as of the Closing; and (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default.

18. Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Payments, the Assigned Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, FNC notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer. Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-

assignment provisions that are void and of no force and effect with the respect to the transactions authorized by this Order. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to FNC of the Assigned Contracts have been satisfied, including that FNC has provided adequate assurance of its future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, FNC shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assigned Contracts, and such Assigned Contracts shall remain in full force and effect for the benefit of FNC. All right, title, and interest of the Trustee to any security deposit held by the non-debtor party to any Assigned Contracts shall also be assigned to FNC, subject to the terms of the respective Assigned Contracts. Each non-Debtor counterparty to the Assigned Contracts shall be forever barred, estopped, and permanently enjoined from: (a) asserting against the Trustee, the Debtors or FNC or their respective property any assignment fee, acceleration, default, breach or Claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing, including any breach related to or arising out of change-in-control provisions in such Assigned Contracts, or any purported written or oral modification to the Assigned Contracts and (b) asserting against FNC (or its property, including the Purchased Assets) any Claim, counterclaim, defense, breach, condition, setoff asserted, or that can be asserted against the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities. Notwithstanding any other provisions in this Order, or the APA, in addition to the Cure Payments, FNC assumes the obligations of the Debtors and/or Estates owed to non-Debtor counterparties to Assigned Contracts that have accrued or arisen under the Assigned Contracts before the Closing Date but that have not yet become due

and/or defaults as of the Closing Date. Moreover, FNC is purchasing and shall be entitled to enforce all rights and claims relating to or arising under the Assigned Contracts, and all setoffs and recoupment rights of the non-Debtor counterparties to such Assigned Contracts are expressly preserved in connection therewith.

19. Upon the Closing and the payment of the relevant Cure Payments, if any, FNC shall be deemed to be substituted for the Estates as a party to the applicable Assigned Contracts and the Estates shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assigned Contracts. There shall be no rent accelerations, assignment fees, increases, or any other fees charged to FNC or the Estates as a result of the assumption and assignment of the Assigned Contracts. The failure of the Trustee or the Debtors to have previously enforced one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions or of the right of FNC to enforce every term and condition of such Assigned Contract. The validity of the assumption and assignment of any Assigned Contract to FNC shall not be affected by any existing dispute between the Trustee or the Debtors and any counterparty to such Assigned Contract. Any party that may have had the right to consent to the assignment of any Assigned Contract is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

20. The assignments of each of the Assigned Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

**Resolution of Certain Cure Objection**

21. With respect to the Assigned Contracts to which Shady Grove Reproductive Science Center, P.C., Fertility Centers of Illinois, S.C. (and its affiliates), Reproductive Science Center of the San Francisco Bay Area, Inc., Northwest Center for Infertility and Reproductive Endocrinology and Reproductive Endocrine Associates of Charlotte, P.C. (collectively the

"Consensual Practices") are a party, the Consensual Practices agree to the assumption of such Assigned Contracts by the Trustee and the assignment of the Assigned Contracts to FNC; provided, however, that FNC and each of the Consensual Practices agree to engage in good faith negotiations to reconcile and resolve the applicable Cure Amounts owed to each Consenting Practice under their respective Assigned Contracts as set forth in the objections and reservations of rights filed by the Consensual Practices [Docket Nos. 166 and. 219] (including, but not limited to, each Consensual Practice's share of PDE for physician compensation calculated through the date of the assumption of the applicable Assigned Contract, amounts owed to third-party vendors through the Petition Date, refunds owed to patients through the Petition Date (solely to the extent not credited as revenue for purposes of calculating PDE) and amounts owed under the Attain Program (solely to the extent not credited as revenue for purposes of calculating PDE)), and agree that such negotiations shall occur, to the extent reasonably practicable, at a time prior to the Closing Date, and otherwise, at a time reasonably practicable after the Closing Date; provided, further, however, that the Consenting Practices and FNC reserve the right to have this Court determine the appropriate Cure Amounts due under the Assigned Contracts should the parties reach an impasse or are otherwise unable to reach agreement as to the Cure Amounts due with respect to the applicable Assigned Contracts.

## Other Provisions

22. FNC shall cooperate with Messiahic Inc. d/b/a PayJunction ("PayJunction") and use reasonable best efforts to promptly provide documents, information and assistance reasonably required by PayJunction to enable PayJunction to investigate and, if appropriate, timely challenge any chargeback claims asserted by any Practice Patients.

23. Nothing contained herein or in the Purchase Agreement is intended to be, nor shall be construed as, a waiver, release, modification or discharge of any rights, remedies or claims that may be asserted by PayJunction or any other counterparty to any credit card processing agreements or related documents executed by the Debtors against any medical practices or other non-debtor parties.

24. Notwithstanding anything to the contrary contained in this Order or the APA, (i) the findings of fact and conclusions of law contained in this Order shall not apply, nor be binding upon, Reproductive Partners Medical Group, Inc., Utah Fertility Center, P.C., Coastal Fertility Specialists, LLC, Nevada Reproductive Labs, Foulk & Whitten Nevada Center for Reproductive Medicine, P.C., Seattle Reproductive Medicine, Inc., Reproductive Partners Medical Group – La Jolla, Inc., and Center for Reproductive Medicine, P.A. (Collectively, the "Non-Consenting Medical Practices"), the Idaho Center for Reproductive Medicine LLC ("ICRM"), and IntegraMed Medical Texas, PLLC ("IMT"); (ii) nothing in this Order or the APA shall authorize, or be deemed to authorize, the assumption or assignment of the Idaho Contracts (as defined in the ICRM's Objection to Trustee's Notice of Executory Contracts That May Be Assumed and Assigned and Trustee's Motion for Entry of Sale Order [Docket No. 159]), the MSAs (as defined in the Opposition to Trustee's Motion for Entry of Order Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases [Docket No. 150])

of the Non-Consenting Medical Practices, or the MSA (as defined in the Objection of Walid Saleh, M.D. and IntegraMed Medical Texas, PLLC to Debtor's Proposed Cure [Docket No. 145]) of IMT, which Idaho Contracts and MSAs are not, and shall not be, Assigned Contracts, as defined in this Order and the APA; and (iii) the APA may not be modified, amended, or supplemented to include the assumption and assignment of the Idaho Contracts, the MSAs of the Non-Consenting Medical Practices, or the MSA of IMT absent further order of the Court.  The entry of this Order shall not impact, alter or impair any rights, claims or defenses of the Non-Consenting Medical Practices, ICRM, or IMT, including those arising under the doctrines of setoff or recoupment.

25.     Notwithstanding anything to the contrary in this Order or otherwise, no agreements between Oracle America, Inc., including any of its affiliates and predecessors-in-interest ("Oracle"), and Debtors are being assigned or transferred to FNC as part of this sale and no Oracle software shall be transferred to FNC as part of the Purchased Assets.  Furthermore, prior to the Closing, FNC or its representatives shall scrub/remove any Oracle software from all the Purchased Assets being transferred by this Order and provide Oracle with an affidavit or certification of such scrubbing unless alternative written arrangements or agreements are entered into between Oracle and FNC, or any of its affiliates, as to the continued use of the Oracle software.

26.     With respect to the sale of the Debtors' interests in CapexMD, LLC and Pharmaceutical Contracting Alliance, LLC, other than the sale of such interests, the sale of such

interests does not alter the rights and obligations of any party under the operating agreements for these entities or otherwise affect those non-debtor entities in any way.

27. Any rights of any patients under any Contract with the Debtors pertaining to the Attain Program are not affected by this Order.

28. Notwithstanding anything to the contrary in the APA or this Order, (i) the Purchased Assets shall not include the Debtors equity interests in Assisted Reproductive Technology Company ("ARTIC") and (ii) no agreements to which ARTIC is a counterparty are being assigned or otherwise transferred to FNC.

29. To the maximum extent permitted by applicable law, and in accordance with the APA, FNC shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Purchased Assets. To the extent that FNC cannot operate under any Licenses in accordance with the previous sentence, the Trustee shall make a reasonable good faith effort (at the sole expense of FNC) to keep such Licenses in effect while FNC works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to FNC.

30. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or License relating to the operation of the Purchased Assets sold, transferred or conveyed to FNC on account of the filing or pendency of these Bankruptcy Cases or the consummation of the Sale contemplated by the APA.

31. FNC shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document, including the Ancillary Agreements (as defined in the APA). The

automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, provided however that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

32. The terms and provisions of the APA and this Order shall be binding in all respects upon the Trustee, the Debtors, their affiliates, their Estates, all creditors of (whether known or unknown) and holders of equity interests in any Debtor, any holders of Claims against or on all or any portion of the Purchased Assets, all non-Debtor counterparties to the Assigned Contracts, FNC, and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s), examiner(s) or receiver(s) appointed in any of the Debtors' Bankruptcy Cases. The APA shall not be subject to rejection or avoidance by the Trustee, the Debtors, their Estates, their creditors, their shareholders, or any subsequent trustee(s), examiner(s), or receiver(s).

33. Each and every federal, state and local governmental agency, department or official is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

34. Upon the closing of the Sale, this Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets and Assigned Contracts or a bill of sale transferring good and marketable title in the Purchased Assets and Assigned Contracts to FNC pursuant to the terms of the APA.

35. The APA may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any

such modification, amendment, or supplement does not, based on the Trustee's judgment, have a material adverse effect on the Estates or their creditors.

36. The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee or the Debtors are a party or which have been assigned by the Trustee to FNC, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale. This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect FNC and its assets, including the Purchased Assets, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Purchased Assets and the Assigned Contracts to FNC.

37. Notwithstanding the possible applicability of Rules 6004(h), 6006(d), 7062 and 9014 of the Bankruptcy Rules or otherwise, the terms and conditions of this Order shall be effective immediately upon entry and the Trustee and FNC are authorized to close the sale immediately upon entry of this Order.

38. This Order and the APA shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, the Debtors, any holders of Claims or liens in, against, or on all or any portion of the Purchased Assets, all non-Debtor counterparties to the Assigned Contracts, all successors and assigns of FNC, the Debtors and their affiliates and subsidiaries, and the Trustee, and shall not be subject to rejection.

39. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.     To the extent there are any inconsistencies between the terms of this Order and the APA, the terms of this Order shall control.

41.     The APA and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

42.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Sale Motion or this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Estates, a waiver of the Trustee's rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: July 31st, 2020**
**Wilmington, Delaware**