**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| INTEGRAMED HOLDING CORP., *et al.*,[1] | Case No. 20-11169 (LSS) |
| | (Jointly Administered) |
| Debtors. | **Re Docket Nos. 35, 460** |

**DECLARATION OF JEOFFREY L. BURTCH IN SUPPORT OF**
**TRUSTEE'S MOTION FOR APPROVAL OF ASSET PURCHASE AND SETTLEMENT**
**AGREEMENT WITH MEDICAL PRACTICES AND FERTILITY NEWCO, LLC**

I, Jeoffrey L. Burtch, declare under penalty of perjury that:

1.    I am the appointed Chapter 7 trustee (the "Trustee") for the estates (the "Estates")

of the Debtors in the above-referenced cases.

2.    I submit this declaration (this "Declaration") in support of the *Trustee's Motion*

*for Approval of Asset Purchase and Settlement Agreement With Medical Practices and Fertility*

*NewCo, LLC* [docket No. 460] (the "9019 Motion")[2] and, to the extent that it pertains to the

Agreement, the Sale Motion.  This Declaration is based upon my personal knowledge of the facts

as set forth below.

3.    Following the filing of the Sale Motion, in connection with proposed sales of

certain of the Estates' assets, I executed and caused to be filed a *Declaration of Jeoffrey L.*

*Burtch Chapter 7 Trustee, in Support of Entry of Order Approving Asset Sales* [docket No. 247]

(the "July 22nd Declaration").  I hereby incorporate by reference the July 22nd Declaration.

---

[1] Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses): IntegraMed Holding Corp. (20-11169 LSS), IntegraMed America, Inc. (20-11170 LSS), Trellis Health, LLC (20-11171 LSS), IntegraMed Fertility Holding Corp. (20-11172 LSS), Reproductive Partners, Inc. (20-11173 LSS), IntegraMed Management of Bridgeport, LLC (20-11175 LSS), IntegraMed Florida Holdings, LLC (20-11176 LSS), IntegraMed Management of Mobile, LLC (20-11179 LSS), IntegraMed Management, LLC (20-11181 LSS), and IntegraMed Medical Missouri, LLC (20-11184 LSS).

[2] Capitalized terms not otherwise defined in this Declaration shall have the meanings given in the 9019 Motion or the July 22nd Declaration (as defined below), as applicable.  To the extent that any statements in this Declaration may be interpreted to conflict with the Agreement, the Agreement shall govern.

4.     Following the filing of the July 22nd Declaration, with the assistance of the Trustee's Advisors, I finalized the asset sale agreements referenced in the July 22nd Declaration with FNC, STL Fertility, LLC, and the Center For Reproductive Medicine P.C., and submitted these agreements for Court approval.  The Court approved these agreements, respectively, by orders entered at docket numbers 285 (dated 7/31/20), 282 (dated 7/30/20), and 283 (dated 7/30/20).  These sales have been consummated.[3]

5.     With the assistance of the Trustee's Advisors, I continued to negotiate with potential purchasers for the remaining Estate assets, and eventually reached agreements to sell substantially all of the Estates' assets related to the New York, Dallas, and University of North Carolina medical practices, respectively, to the entities (or affiliates thereof) presently operating those practices.  The Court approved the New York, Dallas, and University of North Carolina sales, respectively, by orders entered at docket numbers 329 (dated 9/2/20), 387 (dated 9/30/20), and 413 (dated 10/9/20).

6.     Following the consummation of these three sales, the remainder of the Estates' assets (other than cash and causes of action) relate to the "Medical Practices" as defined in the Motion.  Through the Trustee's Advisors, I engaged in arm's-length negotiations with the Medical Practices regarding their potential purchase of substantially all of the Estates' assets related to their respective practices.  In addition, through counsel, I engaged in arm's-length negotiations with the Medical Practices and FNC regarding a resolution of substantially all disputes existing between and among the Estates, FNC and the Medical Practices.

7.     After considerable time and effort on the part of all counsel, the Parties eventually reached an agreement, the terms of which are set out in the Agreement, pursuant to which, *inter alia*: (i) the Trustee will sell to each Medical Practice the "Purchased Assets," which include

---

[3] A portion of the purchase price owed by STL Fertility, LLC has not yet been paid.

substantially all of the assets owned by the Estates that are located at each Medical Practice's premises, and/or used primarily in connection with each Medical Practice, including without limitation the Estates' interest in all accounts receivables, and in inventory, furniture, fixtures and equipment (the "Estate Asset Sale"); (ii) in light of the filing of the Trustee's notice of abandonment, FNC will assign its liens to each Medical Practice relating to such practices as more fully described in the Agreement; and (iii) the Trustee and FNC, on one hand, and the Medical Practices on the other, will enter into a global settlement of all disputes between them (the "Settlement").

8.       In exchange for the sale of the Purchased Assets and the releases given by the Estates to the Medical Practices as part of the Settlement, the Medical Practices are paying $6,725,000 to FNC, and the Estates are receiving consideration including $200,000 in cash, a waiver of all claims against the Estates by the Medical Practices, and each Medical Practice's assumption of all of the Estates' Attain liabilities with respect to its practice.  The Medical Practices are agreeing to indemnify the Estates in the event that the assumed claims are ever asserted against the Estates.  In addition, the Agreement reconciles and finalizes the Estates' payment to FNC of its share of the Fixed Cash Collateral.

9.       Some or all of the Medical Practices may have material, and perhaps in some cases significant, preference exposure, which would be released under the Agreement.  The Medical Practices would certainly assert various defenses to any such claims, and any litigation over such claims would be risky, expensive, and likely would considerably delay the winding up of these Estates.  In light of the consideration being given by the Medical Practices, and under the circumstances, I believe that the Agreement on the whole is fair and appropriate.  In making this determination, as well as the best interests of the Estates, I also took into account the well-

being of the patients, which has been one of my paramount concerns throughout these cases. The Attain-related claims being assumed by the Medical Practices may amount to several million dollars in liability to patients under the Attain Program.  As well as reducing the Estates' liabilities, the assumption of these claims will provide a tremendous benefit to the Attain patients, who will now be able to look to solvent and operating providers to carry out the Attain-related services and obligations for which these patients contracted.  Similarly, finalizing the Agreement will bring needed stability and finality to the Medical Practices, which will ultimately benefit the patients.

10.     Without limitation, the Settlement includes resolution of the following pending matters: *Certain Medical Practices' Motion: (1) to Enforce Termination Rights Under Their Management and Services Agreements With Debtors; (2) Exercise Rights of Recoupment; (3) in the Alternative, Exercise Rights to Setoff; and (4) for an Order Compelling Unrestricted Access to Patient and Medical Records* [docket No. 295]; the *Trustee's Motion for Entry of Order: (I) Further Extending Time to Assume Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(d)(1); (II) Extending Time to Assume Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. § 365(d)(4); and (III) Approving Procedures Regarding Rejection of Executory Contracts and Unexpired Leases* [docket No. 300]; *Fertility Newco LLC's Motion Pursuant to Bankruptcy Rule 9023 to Alter or Amend July 10 Orders* [docket No. 304]; *Fertility Newco LLC's Motion for Relief From the Automatic Stay Pursuant to Bankruptcy Code Section 362(d) and Bankruptcy Rule 4001* [docket No. 315]; the *Emergency Motion of Fertility Newco, LLC's to Stay the July 10 Orders Pending Appeal* [docket No. 373]; FNC's *Notices of Appeal* filed at docket Nos. 394 through 397; and *Idaho Center for Reproductive Medicine's Motion for a Determination that the Automatic Stay Does not Apply and for Relief From the Automatic Stay Pursuant to Bankruptcy Code Section 362(d) and Bankruptcy Rule 4001* [docket No. 447].

11.     With respect to the Estate Asset Sale, the combination of Purchase Price, assumed liabilities, and releases represents the highest and best offer received for the Purchased Assets during the sale process that has lasted now over five months.  I believe that each of the Medical Practices participated in the sale process in good faith, and without collusion, and that the Agreement is the product of arm's-length negotiations.  Indeed, counsel for the Medical Practices and counsel for FNC have devoted considerable time and effort towards reaching the Agreement, and have acted diligently and in good faith throughout the process.

12.     With the exception of the defunct CT Fertility clinic, out of the original pool of twenty clinics with which the Debtors had management services agreements, the Medical Practices are the only clinics remaining that have not yet been the subject of an asset sale by the Trustee.[4]  Consummation of the Estate Asset Sale will bring the first phase of these bankruptcy cases to a close by concluding the transition of all of the formerly associated medical practices away from the Estates, and concluding the Parties' respective obligations under the cash collateral and sharing agreement and the medical practices stipulations.

13.     For the following reasons, I respectfully submit that sufficient grounds exist to waive the 14-day stay of any order approving the Agreement imposed by Bankruptcy Rule 6004(h).  The Parties are prepared to close quickly, which will restore stability to the Medical Practices and, most importantly, to their patients.  In addition, I do not anticipate any objections

---

[4] The CT Fertility clinic has no assets, operations, or employees, and has been closed.

to the approval of the Agreement. The Medical Practices, FNC, and PayJunction have been by far the most active parties in these cases. The former two are parties to, and proponents of, the Agreement. The form of order approving the Agreement attached to the 9019 Motion includes language addressing concerns previously expressed by PayJunction. This language is identical to language included in prior sale orders entered in these cases to which PayJunction expressly agreed. Accordingly, I expect that PayJunction will not oppose the approval of the Agreement and entry of the form of order attached to the 9019 Motion. Therefore, I wish to consummate the Estate Asset Sale as expeditiously as possible.

14.    For these reasons, as well as the reasons set out in the 9019 Motion and the Sale Motion, I respectfully request that the Court enter an order approving the Agreement in substantially the form attached to the 9019 Motion.

Dated: November 18, 2020

Jeoffrey L. Burtch, in his capacity as the
Chapter 7 trustee for the Estates of the
Debtors